## ORVILLE W. BARNES, Complainant and Appellant,

*vs.*

## THE CITY OF RACINE and JOHN M. EARLE, Defendants and Appellees.

### APPEAL IN EQUITY FROM THE RACINE CIRCUIT COURT.

Though in case of a bill for a perpetual injunction, the preliminary injunction may have been dissolved, and no appeal taken, the complainant is not precluded from bringing his case to a hearing, and from obtaining a perpetual injunction if his case warrants it.

By statute, all obstructions placed in navigable streams are made nuisances, and prohibited, unless special authority is granted to erect and maintain them.

Where the complainant has a special and private interest in the navigation of a stream of water, distinct from the public interest, which will be injuriously affected by an obstruction placed therein, a court of equity will grant relief by injunction.

Where the erection of a nuisance will cause private and special damage to each of several persons, they have a common right to prevent its erection, and may join as complainants in a bill for that purpose, or to abate it after it is erected.

The general power given to the city of Racine to erect bridges, &c., is to be viewed in connection with the right of the public to use the water for the purposes of navigation, and must be exercised in such a way as to occasion the least obstruction to navigation compatible with the convenience and accommodation of the public.

THE bill in this case was filed in the Racine Circuit Court in September, A. D. 1853, for an injunction to restrain the said defendants from building a bridge across Root River in said city. Some eight persons joined with the said Barnes as complainants, each alleging some special interest and injury. Earle was employed by the city as contractor to build the bridge. The bill sets forth the respective interests of the several complainants, in the different parcels of property or lots situated upon the said river to be affected by the erection of the proposed bridge.

The bill further states that the said Herrick (one of the complainants) is the owner in fee of lot seven in block one in the fifth ward of said city of Racine, and that the said Lorenzo Janes is the owner in fee of lot seven in block one in the first ward of the city of Racine, on which last-mentioned lot the south abut-

ment of the bridge in said bill mentioned is intended to be located; that said lot is chiefly valuable as a water lot connected with the navigation of the river, harbor and lake, and the erection of said pier and abutment will render it valueless. That all the other lots are water lots, and only valuable as connected with the navigation of the river and lake, and that said river is a navigable and meandered stream; that said lots are bounded on one side by such navigable and meandered river, and were laid out and designed for water lots in the plot of said city. That said Sidney A. Sage has erected a steam flouring mill on his said lots, and a wharf adjoining said lots, and that said wharf and lots are used for the purpose of shipping, and that the other of his said lots are used as a ship yard, for the purpose of building vessels. That Alanson H. Lee and John Dickson have wharfed their said lots at great expense, and that they are used for receiving lumber from vessels, and other commercial purposes. That Orville W. Barnes has a ship yard and ways for building vessels on his said lots. That the said Charles Herrick has at great expense wharfed his lots, and they are used for commercial purposes. That the said Durand & Hill have erected ways and a ship yard for ship building on their said lots, and that they are used for the purposes of ship building. That said Durand & Hill and Norton have wharfed their lots and built thereon a costly and expensive warehouse for the purpose of storing freight brought to or conveyed therefrom by vessels navigating said river and lake; that each and every of said lots are valuable for commercial purposes, but are of little value for any other purpose. That the complainants severally purchased the said lots mentioned so as aforesaid owned by them respectively, for the purpose of using and enjoying the same as water lots, and to be used for wharves, warehouses and other purposes connected with navigation, with the right of free access by said river to and from the same by vessels and other craft navigating the same, without obstruction. That the complainants severally hold their said lots respectively by a direct chain of title from the United States, and that the original purchase was made as of lands lying on a meandered stream, and the complainants hold their lots by title derived from said original purchasers, and that by the statute in such case made and

provided, they are severally entitled to the free and unmolested flow of the water of said river over land within the meandered lines thereof.

That said Reuben M. Norton is also owner of lot one in said block eleven of said city, which is also a water lot.

That Durand & Hill own the schooner Cherokee, which belongs to said harbor and is engaged in navigating said river, harbor and Lake Michigan, and freights and discharges at said warehouse of Norton, Durand & Hill.

That the course of the harbor from the lake back to the line of Wisconsin street is nearly west, at which point there is an angle in said harbor of about ninety degrees, from thence, up the river the course of the harbor is nearly south, passing all the said lots, so that the course of the river down stream by all of their lots is nearly north, and at the line of Wisconsin street it makes an angle and runs nearly due east. That the Racine and Mississippi Railroad is located to the bank of said river above these lots, and then passes along the bank of said river, passing all of said lots. That the Lake Shore Railroad intersects the river above said lots. That a large part of the business of said railroads will pass along on said river past these lots, that they are well calculated to do a freighting and warehouse business if no artificial obstructions are interposed. That the action of the water below said angle in times of storms and high winds, is very great, and vessels cannot lie there in safety; but that above, the water is not affected by storms or winds, and vessels can lie in safety and receive and discharge freight; that below said angle, the ice is frequently broken up by the winds in the winter, but above it is undisturbed and vessels can winter there in safety. That the city of Racine is a body corporate, and is situated on said river in Racine county, that by an ordinance, said city has directed that a bridge shall be erected across said river from near the foot of Wisconsin street in the first ward, to Wisconsin street in the fourth ward, and which will illegally obstruct the flow of water therein at said angle, without any legal or equitable right, power or authority to do so. That the bridge is to be erected with a pier sunk in the centre of the river, in the channel, about twenty-five feet in width, to have a space about fifty feet on each side of the pier, and the remainder of the space

over the river is to be built up with abutments extending from each bank to the said space, and to have a swing of 125 feet; that said city has contracted with one John M. Earle to build the bridge, pier and abutments.

That such bridge will greatly impede, injure and obstruct navigation, will cause bars and currents in the river that will prove dangerous to navigation; that it will prevent vessels passing above the bridge in storms and endanger vessels to be wrecked thereon, and at all times prevent the flow of the water, and prevent the free passage of vessels so as to come to the said lots and wharves of the complainants and deprive them of their profit; that said pier and draw will be in such positions as to make the navigation dangerous; that on account of the angle in the river, the bridge cannot be passed with facility, when the draw is open, and that the obstruction of the bridge, draw and bars that will be formed by it will greatly injure the value of the complainants' said lots, and will work a great wrong and injury to the complainants, and that the current will be turned into the western shore of said river at said angle, which will be greatly injured. That said bridge is not necessary; that the public will be as well accommodated by a road around said angle, which can be built at far less expense and all obstruction avoided; and that said bridge will be a nuisance to each of the complainants if erected. That said Earle is now about ready to put in said pier and build said bridge, and that the complainants have applied to him and to said city to desist from said work, but they do absolutely refuse so to do.

The bill prays for an injunction to prevent the defendants from further proceeding in the construction of said bridge, pier, abutments and swing, and from putting any obstructions or other thing across the said Root River and harbor, or in any way obstructing the flow of the water of the same over land lying between the meandered lines of the said river and harbor, and the middle of said river and harbor, and restraining the defendants from placing any nuisance or obstruction to the navigation in said harbor and river, and from doing anything to prevent the free passage of all vessels, ships and other craft navigating the said river and harbor to and from the said lots located thereon, and especially to the said lots of said complainants, and particularly

restraining them from erecting said Wisconsin street bridge across said river and harbor, and that said defendants might be perpetually restrained and enjoined therefrom.

The bill also prays that said bridge, pier and abutments may be decreed and declared to be a nuisance to navigation, and also contains a prayer for general relief.

On filing the bill September 9th, 1853, an injunction issued. October 17th, defendant Earle's answer was filed, and on the same day a motion to dissolve injunction was filed. The answer of the city was filed January 4th, 1854, and at the October term, 1853, the injunction was dissolved by the circuit judge then presiding. But the order dissolving, provided for the injunction's remaining in force (provided an appeal was taken from the order dissolving) until the appeal should be decided. But the appeal was defective, and the right of appeal was lost.

The answer of Earle sets up in substance, that he has no knowledge in regard to complainants' ownership of said lots in the bill mentioned, and submits for proof.

Admits that Root River is a navigable stream, and alleges that in 1844, complainant Sage erected a bridge across said river in line with Fourth street a short distance above his mill, without any swing or draw therein, and that all navigation is interrupted thereby, but that it might be navigated above that place by all kinds of craft, but for that bridge. States that he cannot admit or deny anything in relation to the improvements on the lots of complainants in the bill, nor of whom or for what purposes they purchased the same, or as to the owners of the schooner Cherokee. Admits that above the bridge, but not at that point, the river makes an angle or circle, but he says said angle is several rods west of said bridge; that from the point of said angle the river flows in nearly a northeasterly direction towards the tobacco factory; that just above the factory is another turn to nearly a southeasterly course until near Tuckerman's warehouse, where another turn occurs bearing nearly or quite an easterly course to the lake.

Denies it to be true that the action of the water below the bridge is such that vessels cannot load and discharge there at all times except in very high winds. Avers that most of the commercial business is transacted below this bridge; that immense

quantities of lumber are received and discharged by Pendleton & Taylor at their wharf below this bridge; that vessels can and do lay up below said bridge opposite the tobacco factory. Admits that he has entered into a contract with the city to build a bridge, at the point mentioned in the bill of complaint, according to the terms and specifications contained in the contract, which is substantially as set forth in the bill. Avers that in 1844, a draw bridge was built at the same point and ever since then has been maintained there; that it is a public crossing place now used; that the village and city authorities, have kept a man there to tend it, that there might be no unnecessary delay in passing it, and that all kinds of vessels and water craft, do not now find, and never have found any difficulty in passing and repassing it; that the bridge by use, got out of repair and was repaired by the village authorities with a swing, and that the same again getting out of repair the city council authorized the erection of the bridge in question, and that the city council have full authority in regard to bridges in the city. Denies that the proposed bridge will seriously injure navigation; that vessels have always passed the old bridge; that complainants have never made any serious complaints about "its being an obstruction," and that all kinds of vessels now go above it as often as occasion requires, to discharge lumber on the lots of Sage, and all other kinds of freight. Denies that it will endanger vessels passing up said river in storms, but that on all occasions they will be able to slacken sail before reaching said bridge; that said pier is intended to be so built that if a vessel should strike it, it would open directly. That the breakwater being of a diamond shape, a vessel hitting it would be diverged to the right or left, and strike the swing part of the bridge, which would open.

Denies that the erection of the bridge will injuriously affect the several lots belonging to said complainants, or that it will cause the current of the river to wash the western bank more than it now does; claims that a bridge at this point is necessary, and that it will be used more than any other bridge in the city, and denies that a road around the elbow of the river would accommodate the public better than this bridge. Avers that the United States are going to improve the harbor by narrowing the mouth so that the sea will not affect the harbor below this bridge.

Claims that the complainants have no right to maintain any suit against him or the city in the premises, but that if said proposed bridge will be an obstruction to navigation, or a nuisance, the proceeding should be in the name of the attorney-general.

The answer of the city, by Henry T. Fuller, attorney, is that the defendant is uninformed as to the ownership of the lots mentioned in complainants' bill, &c.

Alleges that the course of the river is northeasterly from western limits of city to Wisconsin street, and from thence east to the lake, and that it makes an angle of about 40 degrees at said street and no more. Denies all knowledge as to the location of the Racine and Mississippi Railroad and the Lake Shore Railroad, and denies that complainants' lots will ever do any business connected with them, but avers their business will be done on their own lots. Denies the action of the lake on the harbor below the bridge as alleged in bill, and claims that vessels are at all times safe there to take in or discharge freight.

The answer then describes the laying out the village of Racine into lots, its incorporation as a village in 1841, and that it was afterwards incorporated as a city in 1848. That in 1836 Wisconsin street was dedicated to the public as a street extending through said city from north to south, and crossing the river at the proposed location of this bridge, and that it has ever since been used as a street. That a bridge was first erected at this point in 1842, and that it has been continued from that time to the spring of 1853, and been used by the public; and that for the purpose of rebuilding said bridge this defendant did on the 23d day of May, 1853, enter into a contract with the defendant Earle, to build a bridge at said point, substantially as set forth in the bill of complaint. That in pursuance of said contract the said Earle commenced building said bridge, and now has it about two-thirds completed, and that he has received from this defendant about $2,076.00 towards his pay. This defendant has authorized the building of no other bridge, and denies that the building of this bridge will have the injurious effects charged in said bill.

Avers that in 1842 the business and inhabitants of Racine required the building of a bridge at this point, and that one was built by an appropriation from the town and by voluntary subscription, and that it has ever since been maintained, and that it

is now necessary for the convenience of the people that it should be continued; that it was first built with a draw to allow vessels to pass, and that vessels have never been hindered or delayed by it, and that when completed now, it will not in any manner obstruct or impede navigation, and denies that a street around the elbow of the river will accommodate as well. Denies that complainants have applied to have defendant desist from erecting this bridge, or that said bridge is or will be a nuisance to the complainants or either of them, or that it is or will be a public nuisance, but avers that it will be of great public utility; claims that defendant had a complete, legal and equitable right to authorize the erection of said bridge, and further insists that all the matters in said complainants' bill contained, are matters which may be tried and determined at law, and with respect to which the complainants are not entitled to any relief in equity, and this defendant hopes it shall have the same benefit and advantage of this defect as if this defendant had demurred, &c.

To these several answers a general replication was filed, and the cause being at issue was referred to a commissioner to take testimony.

The testimony taken under this commission, and produced on the hearing, was quite volumnious and somewhat conflicting.

On the part of the complainants, it was proved by several witnesses, mariners, vessel owners, navigators, &c., that the river (Root River) from its mouth, the entrance of the harbor, extends back directly west a quarter of a mile westerly, thence (up stream) the river deflects to a southerly direction, making nearly a right angle, extending in that direction about one-fourth of a mile; that the bridge spans the river at the elbow or angle; that the bridge was intended to be built upon an improved turn-table circular draw, but was not in accordance with the plan in its operative qualities; that the turn-table stands in the centre of the river, "right where a vessel has to make the angle of the river," and consequently it is considered a great obstruction to the navigation, "the turn-table being right where the vessel should pass;" that vessels entering the harbor in a storm would be very likely to strike the bridge and endanger both the vessel and the bridge; that it would be nearly impossible, on entering the harbor in a storm, to stop a vessel before she would arrive at, and pass or

strike the bridge; that there is no place of safety below the bridge in a storm, and vessels would have to make (turn) this angle before they could find a place of safety or a good harbor; that the bridge is located at the very worst place on the river, so far as it affects the navigation thereof; that it would affect the value and use of the lots above the bridge, by reason of the difficulty and danger of passing the same; that it would be impossible in a storm to avoid collision in attempting to pass said bridge, endangering both vessel and bridge, and that there was no safe harbor below the bridge; that difficulty and inconvenience had been suffered by persons owning lots and doing business above the bridge, because of the difficulty of passing with vessels, the old bridge being situated in the same place, or nearly the same place as the bridge in question. Without further recapitulating the evidence of the complainants, it will be sufficient to say, that the testimony produced on their part showed that the erection and maintenance of the bridge would be a serious impediment to the navigation of the river, and the safe and convenient use and enjoyment of the harbor.

The testimony of other witnesses was produced on behalf of the complainants to the same purport, which it is unnecessary to report at length and in detail. It will suffice to give so much, or the substance thereof, as may be material to the appreciation of the opinion of the court, founded upon the facts found and established thereby.

From the testimony of the witnesses produced on the hearing, it appeared that the erection of the bridge at the place and upon the plan alleged and admitted, would seriously interrupt and obstruct the navigation of the portion of river in its vicinity; that the location thereof disadvantageously affected the approach to, entrance and use of the harbor at mouth of the river; that the portion of the river above the bridge was used for the purposes of navigation; that a vessel was actually used, and had been so used in the receiving and discharge of freight above the proposed bridge, and that the construction of such bridge upon the proposed plan would be a serious and permanent interruption to such use and navigation of the harbor and river aforesaid; that the interruption and obstruction occasioned by the bridge would not depend upon the accidents of weather, but would

arise from the bridge itself, in reference to its location and the course and channel of the river. The witnesses for the complainants testified with great particularity in relation to the obstruction of the bridge to the navigation of the river and use of the harbor at its mouth, and established the ownership and use of a vessel by one of the complainants, used in navigating said river and harbor above the place of the bridge, and running to, discharging and receiving freight from and to a warehouse owned by one or more of the complainants, situated above the place of said bridge.

The complainants also produced evidence showing their title respectively, and on the hearing the following state of facts was admitted by stipulation :—

"In this case it is agreed that some time in the year 1844 a draw bridge was erected across Root River by the permission of the then village authorities of the village of Racine, in place where the bridge mentioned in complainants' bill is proposed to be built, which was used as a public thoroughfare and crossing up to 1849, when the same getting out of repair, was rebuilt by the city authorities with a float and was occupied and used for the same purpose until the year 1853, when it getting again worn out the city authorities resolved to rebuild it in a manner set forth in the bill and answer."

The testimony being closed, the counsel for the defendants raised a preliminary question as to the right of the court at that time to enter into an investigation of the case, inasmuch as his honor Judge Spooner (the immediate predecessor of the then sitting judge) while sitting as judge of said Circuit Court, had heard a motion in the case to dissolve the injunction granted therein, and had sustained said motion, and it was contended that the decision upon that motion to dissolve said injunction, involving as it did, the question of equity or no equity in the bill, made the matter *res adjudicata,* and that said decision was a bar to all further proceedings in this court.

And the court, after hearing counsel upon this question, did decide and deliver the following opinion, to wit :

"The bill in this cause was filed to restrain the city of Racine and their agents and contractors from building a bridge on Root River in the city of Racine ; a preliminary injunction was is-

sued; a motion was made to dissolve the injunction upon the bill alone upon several grounds, among which the want of equity was one; the motion was heard and decided by my predecessor, Judge Spooner, and the injunction dissolved.

No written opinion of the judge appears among the papers, showing the grounds upon which the decision was made by the court. But from the statement of counsel and from my personal recollection (having been present when the decision was made), the decision was in fact made upon the ground of the want of equity in the plaintiff's bill to maintain their suit, and involved the merits.

1st. Is that decision *res adjudicata* in this court in this case, upon the final hearing? It is not necessary to pass upon that question, but if it were I am inclined to think it is not.

2d. If not *res adjudicata* technically, does not that respect which the present judge is bound to pay to the judgment and opinion of another judge of equal authority, sitting in the same cause, call upon the judge of this court to act upon that decision throughout the cause in which it was given, until reversed? I think it does.

3d. Also, it appears by the papers that upon the dissolution of the injunction by this court, the city has in fact expended a large sum of money in erecting a bridge; and the question arises, is not this court in this case bound, in consistency with itself, to carry out the opinion it has given, upon the strength of which the expenditure has been made, until the matter can be carried to the Supreme Court and there the whole matter be settled? The proofs upon both sides having been closed, the Supreme Court will have the whole case, both upon the bill, answer, and upon the proofs, to make a final adjudication of the whole question, which the interests of the parties require.

I am inclined to think that upon the whole my duty is to dismiss the complainants' bill of complaint.

The bill was accordingly dismissed, and the complainants appealed.

*J. W. Carey*, for the complainants.

*Ira C. Paine*, for the defendants.

*By the Court*, WHITON, C. J. We do not think that the reason given by the judge who decided the case in the court below for dismissing the bill, is a valid one.

It appears that an injunction had been obtained at the time of filing the bill, and that a motion had been made before the predecessor of the judge, to dissolve it on various grounds, one of which was an alleged want of equity, and that the motion was sustained. The judge who dismissed the bill thought this was a decision upon the merits of the bill, which precluded him from an examination into them. In this we think he was mistaken. The order dissolving the injunction was perhaps final so far as the injunction was concerned, if not appealed from, and could not be questioned in any of the subsequent proceedings; but we are aware of no rule in equity which requires an appellate court to acquiesce in the reasoning of the judge by which he arrives at his conclusion. The injunction having been dissolved, and no appeal having been taken from the order dissolving it, the complainants are perhaps precluded from questioning the propriety of dissolution in this appeal, but they were not precluded from bringing their case to a hearing upon its merits. They might not have regarded the injunction as material, or might, in order to save time and obtain a speedy decision upon their case, have chosen to forego the benefit of an appeal.

It is no answer to say that the judge did in fact dissolve the injunction, because he was of opinion that there was no equity in the bill. It is enough that he did not so decide. He merely decided that the injunction should be dissolved, and that decision is not necessarily an adjudication upon the merits of the bill.

This brings us to the consideration of the bill and of the case as made out by the testimony.

The first question which presents itself is, whether the bridge, to prevent the construction of which the bill was filed, is a nuisance, independent of the question as to the authority of the the defendants to construct it. Upon this question we have no doubt. By our statute (*Rev. Stat. chapt.* 34 § 1; *Sess. Laws*, 1853, *chapt.* 72, § 2), all obstructions to the navigation of streams of the description of the one over which the bridge in question is built, are prohibited. Unless then, the city of Racine had authority to build the bridge, its erection was forbidden, and

the bridge when built would be a public nuisance. The next question is, whether the bill and testimony show that the complainants have a private and special interest distinct from the public, which will be injuriously affected by the erection of the bridge. We have arrived at the conclusion that both the bill and the testimony do show that to be the fact. The situation of their property is such that the erection of the bridge, while it would result in damage to all who have occasion to navigate the river above the bridge, would be the occasion of special damage to the complainants. Under such circumstances the authorities are clear, that an action at law can be maintained to recover damages occasioned by the erection of the nuisance or a suit in chancery to prevent its erection, if the circumstances are such as to warrant the interference of a court of chancery. *Walker vs. Shepardson*, 2 *Wis. R.* 384, *and authorities there cited.* Nor do we see any objection to such persons joining in a suit as parties complainants. As the erection of the nuisance would cause private and special damage to each of the complainants, they have a common right to prevent its erection, or to abate it after it is built. At least it is too late to raise the question of multifariousness at the hearing. See 4 *Paige R.* 510; *Reed et al. vs. Gifford*, 1 *Hopkins R.* 416; *Murray et al. vs. Hay*, 1 *Barb. Ch. R.* 59.

We will now proceed to discuss the question whether or not the city of Racine had authority to erect the bridge. It is not claimed on the part of the defendants, that the legislature has given any special authority to the city to erect it, but it is contended that under the authority contained in the charter of the city, the city authorities had the power.

Assuming that a general power is given to the city authorities by the charter to erect bridges over navigable waters within its limits (which does not seem very clear), still it would not follow as a necessary consequence, that authority was given to erect the bridge in question. Such general authority would exist subject to many limitations. It would not give the city authority purposely to obstruct navigation, nor allow it so to erect bridges as to produce that effect, where a slight change in the mode of construction would prevent it. This general power to erect bridges must be viewed in connection with the right of the public to use the waters for the purpose of navigation, and must

Barnes vs. The City of Racine and Earle.

be exercised in such a way as to produce the least obstruction to navigation, compatible with the convenience and accommodation of the public.

If these views are correct, it seems to us very clear that the city had no authority to erect the bridge in question. All the testimony shows that the place where the bridge is built, is the worst that could have been selected for such a purpose. It appears that it is built in an angle of the river, so that it is almost impossible for vessels to pass through the draw without getting aground; the course of the river being such as to require any craft which passes through, to change its course materially at the moment of passing, in order to prevent that result. It also appears that a few rods above or below the place where the bridge is erected, no such consequence would follow the erection of a suitable bridge, and it does not appear, but that the public would be as well accommodated by a bridge at either of those places, as by the one in question. Granting then, that the city of Racine had the general power to erect bridges over Root River, within the limits of the city, we are of opinion that it had no authority to authorize the obstruction to navigation which this bridge occasions. If the legislature had conferred upon the city the power to build a bridge at the place where the one in question is situated, the question presented would be very different. But as in our opinion no such power has been conferred, we must hold that the bridge complained of is a nuisance. We must therefore reverse the decree of the court below.