January Term,
1862.

WOOLISCROFT VS. NORTON and another.

WOOLISCROFT
v.
NORTON et al.

A deed of a mill lot and a certain amount of water power, contained a covenant by the grantees that they would pay their ratable share of the expenses of keeping the dam and raceway in repair, "in proportion to the number of square inches of water by them owned or used," and that upon a failure to make such payments, the grantors should have the right to enter upon said lot to shut off the water until such payment should be made. *Held*, that this covenant ran with the land, and bound all persons claiming under the deed.

The contemporaneous construction of the covenant by the parties was, that the grantees should contribute to the expense of such repairs in the proportion which the water they owned or used bore to the whole amount of water used from the power by the proprietors thereof and their several grantees and les; sees, and not in the proportion only which the power granted by said deed bore to the whole amount of power created by the dam, whether in actual use or not; and the court *held* that construction to be correct.

The account of the original proprietors of said water power against the several persons holding portions of the power under them, for their several shares of the expense of certain repairs, was put into the hands of the person who made the repairs, with directions to collect the same and apply it in payment for his work, but without any formal assignment: *Held*, that an action against one of the parties liable for a portion of said account, was properly brought in the name of the person so holding the account.

APPEAL from the Circuit Court for *Rock* County.

Action to recover for work done and materials furnished by the plaintiff in repairing a dam and raceway. The facts, as reported by a referee, were substantially as follows:

A. Hyatt Smith and M. O. Walker were owners of land in Rock county, and of a dam erected thereon across Rock river, and of the power thus created; Smith owning three-fourths and Walker one-fourth, undivided. While they were such owners, in 1849, Smith executed to Stevens & Older a deed of a portion of said land for a mill site, and for 550 square inches of water to be used thereon—this being the first conveyance of any part of said water power by the proprietors or either of them. This deed contained a covenant by the grantees that they would pay their ratable share of the expenses of keeping in repair the dam and raceway, "in proportion to the number of square inches of water by them owned or used;" and that on a failure by them to make such payments, the grantor should have the right to enter upon said lot, and to shut off therefrom all of said water until

such payments should be made; and for that purpose, but no other, all water-gates through which such water might pass, were declared to be the property of the grantors, their heirs, &c. Subsequently Older quit-claimed his interest in said grant to Stevens, who afterwards, in December, 1850, received a deed from Smith & Walker of additional land and 500 square inches more of water. This deed contained a covenant by Stevens similar to that above described. By mesne conveyances, each containing similar covenants on the part of the grantees, the defendants *Norton* and *Ford* became equal owners in common of the land and the right to said 1050 square inches of water, and were such owners when the repairs mentioned in the complaint were made; except that *Ford*, after said repairs were made, purchased and had conveyed to him by said Walker, the undivided fourth of the first mentioned tract of land and 550 square inches of water. Other portions of the water power were conveyed to different persons, and were used by them. Prior to 1857, the plaintiff, on two occasions, made repairs upon the dam, &c., and to pay him therefor, the several owners, lessees and users of the water, including the defendants in this action, had been assessed for the same in the proportion which the amounts " owned or used by them respectively " bore to the " whole amount of water used from said water power "—which amount was determined by adding to the aggregate of the quantities sold or leased by the proprietors Smith & Walker, the amount *used* by said proprietors themselves. These assessments had been made " by the proprietors and by their authority," and " when so made were turned over to the plaintiff, to be applied, when collected, in payment of his charges against said water power." In most cases said assessments had been paid; and the two assessments against the defendants *Norton & Ford*, made prior to that now sued for, had been paid by *Norton*, one of the defendants, for said *Norton & Ford.* In 1857, Smith & Walker employed the plaintiff to make certain repairs mentioned in the complaint; and he did work and furnished materials to the value of $1630.62, and this amount was apportioned among the several owners, lessees and users of the water in accordance with the rule above

January Term, stated—the sum of $221.69 being apportioned to the defend-
1862.

ants.    After the work was completed and the assessment
Wooliscroft made, the plaintiff called on *Norton*, one of the defendants,
v.
Norton et al. for payment, and he agreed to pay by giving the note of
*Norton & Ford*, if *Ford* would consent; but *Ford* declined to
pay or to give the note of the firm as proposed, but offered
to set off a note which he held against A. Hyatt Smith, to
pay the assessment or such part thereof as it would pay.    All
parties then called on Smith to obtain his assent to such
offset, which he refused.

The referee also found that neither at the time when the
work was done and the materials furnished by the plaintiff,
nor afterwards, had any formal assignment or transfer of the
assessments been made to the plaintiff by the owners of said
dam and water power, but the same were handed over to
him by A. Hyatt Smith with directions to collect them and
apply the money to the payment of said claim for repairs.
The referee found also that *Norton & Ford* had a valid
counter-claim against the plaintiff for $36.34.

The circuit judge held, upon these facts, that the cove-
nant for repairs by the grantees of Smith & Walker, ran
with the land, and was binding upon the defendants; that
there was an implied promise on the part of the defendants
to pay the plaintiff their portion of the expense of repairs
made by him, when ascertained according to the rule provi-
ded in the deed; but that in making such assessment the
proportion of such expense to be paid by the defendants
should be that which the amount of water power owned by
them bore to the whole amount of water power created by
said dam and raceway, whether the same was actually used
or not.    The court therefore directed the referee to take
proof and report the amount of such power, and the propor-
tion which the power granted to the defendants bore there-
to.    To this order of reference, and to said decision as to the
rule for computing the defendants' proportion of the whole
expense of repairs, the plaintiff excepted, and appealed from
the order.

*H. K. Whiton*, for appellant, to the point that the coven nt
to pay a ratable share of the expense of keeping the dam

and raceway in repair, ran with the land, cited *Norman vs.*
*Wells.* 17 Wend., 136 ; *Bardwell vs. Ames*, 22 Pick., 333 ; _____
*Vernon vs. Smith*, 5 Barn. & Ald., 1. In *Wheelock vs. Thayer*,
16 Pick., 68, and *Hurd vs. Curtis*, 19 id., 459 (cited on the
other side), there was no conveyance of real estate to sup-
port a covenant real, as there was in the case at bar.

*Knowlton, Prichard & Jackson*, for respondents, to the point
that the covenant was personal and did not run with the
land, cited 19 Pick., 459 ; 16 id., 69, 183 ; 13 Wend., 136 ;
1 Blackf., 149 ; 2 id., 301 ; 12 Mod., 166 ; 3 Term R., 385,
402, 678 ; Tyrwh., 985 ; 1 Just., 215, b ; Shep. Touch., 176 ;
*Spencer's Case*, 5 Coke, 16, 2d Resolution ; 5 Maule & Sel.,
411 ; 2 Johns. Cas., 24 ; 5 Conn., 497. 2. The conclusion
that handing to the plaintiff the account for the expenses
apportioned to the defendants, operated as an assignment of
the claim, is not, if correct, sufficient to enable the plaintiff
to maintain the action. To recover, the action should be
predicated upon the covenant, and allege the refusal to pay
as a breach ; but to maintain such an action, the plaintiff
must show that the covenantees had assigned the covenant
to him. 3. The amount which Stevens & Older were bound
by their covenant to pay towards repairs, was the proportion
which the water they purchased bore to the whole volume
of water in the power. Suppose, this being the first water
sold or used, two-thirds of the dam had gone out the next
day, would they have had to be at the entire expense of re-
pairing the dam? They could not know that the grantors
might not retain all the rest of the power for years, unsold ;
nor that the grantors would require or obtain the same cove-
nant from any future grantee. Again, by the rule of con-
tribution which we insist upon, we have a certain mode of
determining the proportion to be paid, and there would be
no need of making other owners or lessees parties to the con-
troversy. By the other rule, all would have to be brought
before the court, and an apportionment had. The defend-
ants, not being privy to the covenants made by others who
used water, could not put in issue the *pro rata* of the others.
Their proportion may have been more than the plaintiff al-
leged. 4. The handing of the assessment to the plaintiff and

January Term, 1862.

WOOLISCROFT
v.
NORTON et al.

telling him to collect it, gave no right of action on the covenant, and it is the covenant only that makes the defendants liable. When work is done on the property of A, the law will not imply a promise by B to pay for it. B might become liable by an express contract or employment of the person who does the work, but not otherwise.

May 15.

*By the Court*, COLE, J. It appears to us that this suit was properly brought in the name of the plaintiff. He was employed to do the work and make the repairs on behalf of the proprietors of the water power; and although there was no formal assignment of the account against the defendants for repairs, still it was in fact given to him with directions to collect and apply the money to the payment of his claim, so that really he is the party in interest. So that the case may be considered as resting substantially on the same grounds and controlled by the same principles of law, as though the proprietors had done the work, and made the assessment for repairs, and brought their suit for a ratable compensation. If the action could be sustained in the latter case, we cannot see why it cannot now. Could then the proprietors of the water power recover contribution for the repairs, by virtue of the covenants in the deed, and if so, upon what principle should the assessment be made? The solution of this question involves a construction of the meaning and effect of the covenant in respect to repairs, which is common to the various deeds mentioned in the case, and which is in substance as follows: "And the said party of the second part hereby covenants and agrees, in consideration of the premises and of one dollar to him in hand paid, that he will pay his ratable share of the expenses of keeping in repair the aforesaid dam and raceway, in proportion to the number of square inches of water by him owned or used; and that the parties of the first part, and their representatives and assigns, shall at all times, on a failure of the parties of the second part to make such payment, have the right to enter upon said lot, or any other lot upon which said water may be used, and into any building erected thereon, to shut off from the premises where such water may be used, all of the water afore-

said, until such payments as aforesaid shall be made, and for that purpose, but for no other, all water-gates constructed or to be constructed, through which such water may pass, are hereby declared to be the property of the said parties of the first part, their heirs, executors and assigns." The subject of this grant was a mill site, and a certain quantity of water to be used thereon, taken from a dam and raceway called the Janesville water power. The manifest object of the covenant was, to provide adequate means for the due preservation and security of the dam and raceway, which was the common source of power, by compelling the covenantors to pay the proprietors a *pro rata* share of the expense of repairs in the proportion which the water they used bears to the whole amount used from the power by the proprietors and their several grantees and lessees. This appears to be the plain intent and object of the covenant. The defendants were let into a participation of the common rights and privileges in the power, and were made subject to common duties in respect to its preservation. The grantees and assigns were to contribute towards the expenses of the dam and raceway which were for the common use, in proportion to the water power which they derive therefrom, compared with the other owners thereof. Now the question arises, Was this covenant one running with the land, or was it a personal covenant only binding upon the parties who made it? The circuit court held that it was one running with the land conveyed and water granted, and therefore imposed a charge or burden upon the property, binding upon the defendants as assignees of the original grantees. And in this conclusion we think the circuit court was most clearly right. It certainly is not necessary, and would be very unprofitable at this time, to enter upon a discussion of the general question as to what .covenants run with the land, and impose a burden upon it in the hands of all those to whom it may subsequently come by descent or purchase, and what are only personal and impose no such charge. This whole field of discussion has been so thoroughly and completely explored and gone over by writers and courts, which have have had occasion to treat and dis-

cuss this branch of law, that no measure of ability or degree of diligence would now suffice to enable one to throw any more light upon the subject. I could not hope to say anything which would be of the least practical benefit, and I shall not even refer to the authorities which I have examined. But I desire to acknowledge the very great assistance I have received from the valuable notes to *Spencer's Case* in 1 Smith's Leading Cases. I know of no place where a more just, discriminating and comprehensive view of the cases and authorities upon this branch of law is to be found than these. See also the very able opinion of Justice COWEN, in *Norman vs. Wells*, 17 Wend., 136.

An examination of these authorities will clearly show that where a *privity* of estate exists between the parties, and the covenant is one about or affecting the land devised or granted, and tends directly and necessarily to enhance its value or render it more beneficial to those by whom it is owned or occupied, the covenant is said to be incident to the land and binding upon those in whom it subsequently vests.

Some of the authorities state the proposition much more broadly, but I have found no case which holds that a covenant which comes within all these conditions was not one real and necessarily running with the land. And within this rule there can be no doubt that the covenant in this case runs with the land. A privity of estate exists between the parties; the covenant concerns or relates to the property granted; it tends to enhance its value; the benefit of the repairs must directly enure to all interested in the preservation and security of the water power which the defendants own in common with others. For it is very apparent that to enable the defendants to enjoy their property, the mill dam and raceway must be kept in good condition. If the water power is destroyed—and it is evident it would be unless the dam and raceway are preserved—the value of the defendants' mill is depreciated, if not destroyed, too. Nor can it, with any justness, be said, that the covenant relates to matters foreign to the property granted. It is directly connected with it. The subject of the grant is a mill site, and an interest in a water power; and a covenant to contribute to the expense of pre-

serving the water power most unquestionably relates to the
thing granted. We therefore must hold that the covenant
is one connected with or annexed to the property granted,
and binding upon the defendants. This, we think, is clear
upon all the authorities.

The circuit court further decided, that by the covenant,
the defendants were bound to pay a *pro rata* share of the
expenses of repairs only in the proportion which their share
of the water granted bears to the whole volume of available
power in Rock River. But we do not thus understand the
covenant. In our opinion the proper ratio of contribution
is as found by the referee, that the defendants pay in the
proportion which the water they own or use bears to the whole
amount of water used from the power by the proprietors and
their several grantees and lessees.

It appears that this was the contemporaneous construction
of the covenant, and we think it the most rational and cor-
rect. The defendants are bound to pay their ratable share
of the expenses of keeping the dam and raceway in repair.
And what was to be the rule of contribution? Is it proba-
ble that the parties contracting had in view the entire water
power in Rock River as the measure of contribution? Or
must they be presumed to have had in view only the water
power which was available and in use, for adjusting the rule
or standard of contribution?

It seem to us that the parties contemplated the latter rule,
and we think it more rational and reasonable to give the cov-
enant this construction. This furnishes a definite, certain
rule for ascertaining the proportion the parties should con-
tribute towards the expenses of making the repairs, and we
are disposed to adopt it.

It follows from these views that so much of the order of
the circuit court as was herein appealed from, must be re-
versed, and the cause remanded for further proceedings in
accordance with this opinion.