## JOLLY vs. SINGLE.

S. leased a saw mill with its appurtenances to A & B who covenanted not to sub let the same without the written consent of S., and to run the mill day and night and to its utmost capacity for two-ninths of the lumber manufactured by them, and that they would cause the lumber sawed to be measured by a disinterested person, and it was agreed that in case of the violation or neglect to perform any of the said covenants, then S. might enter upon said premises and hold the same in his own right. S. afterwards signed an agreement stating that A & B had made a contract with C & D to rent the premises and saw up the logs in and on the banks of Little Rib river, at a certain rate to be paid in lumber, and S had a mortgage lien on said logs, and that in consideration of having the same manufactured into lumber as specified in the contract with C & D, he consented to and authorized the C & D to saw said logs and receive their pay and that he relinquished all claim to so much of the lumber as might be necessary to pay for sawing, and D assigned his interest in the said contract to C, who proceeded to fulfil the same; and it was shown that C did not run the mill night and day, or to its utmost capacity, which facts were known to S, who afterwards received his share of lumber for rent, and suffered C to run the mill a short time, when he took forcible possession of it and took away part of the machinery. so that the mill could not be operated. In an action brought by C against S for such acts and to obtain an injunction to restrain S from further interference with the mill, in which the complaint set up matters showing the plaintiff's right to such injunction, which were put in issue by the answer, and the issues were tried by a jury, who found "for the plaintiff in the sum of $300 damages and that he was entitled to possession of the premises," which latter portion was stricken out by the court and judgment entered for damages and costs.    *Held* 1. That as the complaint stated a good cause of action in trespass for damages, that the recovery could be sustained, although the judgment did not give the entire relief asked for.

2. The verdict as originally rendered was sufficient to support the recovery and it was not necessary to strike out the latter portion of it.

Jolly vs. Single.

3. That the receiving of lumber by S for rent, after a cause of forfeiture of the lease had occurred, would constitute a waiver of the forfeiture and that his forcible interference with the possession of the mill rendered him liable to C in trespass.

4. That C & D were not, under their sub-lease, limited to the sawing of any particular logs, it not appearing that there was any limitation in that respect in the original lease to their lessors.

5. That the agreement of A & B with C & D and the consent of S thereto, and the assignment by D to C, of his interest therein, gave to C the rights of a lessee of the mill premises, and not of a mere licensee and they could not be revoked by S at his pleasure.

6. The cost of restoring the mill to running order, or the value of the machinery taken away by S was not the proper rule of damages for the acts of S, in entering upon the premises and stopping the mill and taking away portions of the machinery, necessary for operating the mill.

APPEAL from the Circuit Court for *Marathon* County.

The complaint alleges that the defendant *Single*, being in possession of the saw mills on Little Rib river, known as Single's Mills, consisting of the water mill and double steam mill, with the appurtenances, on the 11th of November, 1856, made a written lease of the same to Perley Dodge and *Garry L. Judson*, for the term of four years from the 1st day of December, 1856, and that on the 11th day of November, 1856, he delivered possession thereof to said lessees, and that they continued in the occupancy of the premises, under said lease, until the 9th of April, 1859, and that they then, having a large amount of logs in and upon the bank of the river, which they wanted sawed, proposed to let the plaintiff and *James H. Judson* have the use of the steam mill for that purpose, upon condition that the defendant would consent in writing thereto, and that on the 11th of April, 1859, the defendant, in consideration that the said plaintiff and *James H. Judson* would take said mill and saw said logs, made his consent thereto in writing, stating, in substance, that the plaintiff, in consideration that said plaintiff and *James H. Judson* had contracted with Dodge & Judson to rent the said steam saw mill, and saw up said logs, at the rate of $1.75 per M, and receive their pay in lumber monthly, at the rate of $7.00 per M; and that, as the defendant had a mortgage lien on said logs, from said Dodge &

*Judson*, in consideration of having the same manufactured into lumber, as specified in the contract with Dodge & Judson he consented and authorized the said plaintiff and *James H.* *Judson* to saw the said logs, and receive their pay, and do all things in relation thereto, as specified in said contract, and that he relinquished all claim to so much of said lumber as should be necessary to pay for sawing the same. That on the same day, the plaintiff and *James H. Judson* made an agreement with said Dodge and *Garry L. Judson*, by which said Dodge & Judson let the said steam saw mill, with the appurtenances to the plaintiff and *James H. Judson*, to run by the thousand feet, for such time as might be required to saw up the said logs upon and along said river; and agreed to furnish supplies, &c., required by the plaintiff and *James H. Judson*, at fifteen per cent. above cost, and to pay them $1.75 per M for sawing the same, in lumber at $7.00 per M; and by which said plaintiff and *James H. Judson* agreed, among other things, to run the mill and saw the logs with due dispatch, and stub and pile the lumber for the price aforesaid, and to deliver the mill and appurtenances to said Dodge & Judson when said work was completed; that said plaintiff and *James H. Judson*, under such agreements, obtained possession of the mill and appurtenances, and entered upon the performance of said contract; and continued to run the mill until June 29, 1859, when *James H. Judson* assigned to the plaintiff his interest in said contract with Dodge & Judson and the plaintiff obtained sole possession of the mill and appurtenances, all of which acts and things were done with the knowledge and consent of the defendant; that the plaintiff continued sawing said logs in said mill, according to said contract, until the 1st day of August, 1859, at which time there were 4,200 of said logs remaining unsawed, and that at that time, while he was engaged in sawing the same, the defendant forcibly took possession of the mill, and forbid his sawing said logs, or using the mill, and then detached and took from the engine, the gibs, keys, boxes,

connecting rods and cylinder head, and carried the same away, whereby the plaintiff was deprived of the use of the mill in sawing said logs, and was deprived of employment for his servants hired to saw the same, and suffered damages in the sum of $2,000, and claimed judgment for that amount, and that he was entitled to the possession of the mill, and that the defendant had received the rent of said mill from time to time as the same became due, up to the day last mentioned. The complaint further alleges that the defendant threatened that unless the plaintiff would desist from the sawing of said logs and running the mill, he would forcibly take possession thereof, and eject the plaintiff, and would run the same and saw the logs himself, which the plaintiff feared the defendant would do, unless restrained, &c. The complaint prayed for a perpetual injunction, restraining the defendant from intermeddling with the mill, and from hindering the plaintiff in sawing said logs according to the contract, and also for a temporary injunction to that effect.

The answer alleged that the rent reserved by the defendant from Dodge & Judson in the lease to them, was two-ninths of all lumber sawed in the mills, which was to be of good marketable quality, and to be well stubbed and piled in convenient places for rafting, and that by said lease it was agreed that said Dodge & Judson should not sub-let the demised premises without the defendant's written consent, and that they would not commit waste and would run said mills to their greatest capacity day and night, Sundays excepted, and keep the same in good repair, and cause the lumber manufactured to be measured by a competent and disinterested person, and in case of violation of, or neglect to perform and keep said agreement, then the defendant was to have the right to enter and take possession of the demised premises, and hold the same in his own right; that the said Dodge & Judson leased and sub-let the steam mills to the plaintiff and *James H. Judson*, and have leased other portions of the demised premises without the de-

fendants written consent thereto, and that said Dodge & Judson
had suffered the mills and machinery to get out of repair and
to remain so for the space of two months, and permitted said
mills to be idle for three months, and had not run the same
to their greatest capacity, and had not manufactured the lumber sawed by them, in a good and workman-like manner, nor
piled the same as they agreed to do, and had caused the same
to be measured by a person interested adversely to the defendant, and that they had suffered the rents of the demised premises to be in arrear and unpaid and to remain in arrear a long
time after they were demanded.    The answer admits the execution of the instrument running to the plaintiff and *James
H. Judson*, but denies that it was made with the intent to let
them hold possession of the mill, or to ratify any lease they
might have had from Dodge & Judson, but for the sole purpose of consenting that the logs therein mentioned, might be
by them manufactured into lumber, on the conditions as to
manner and price of payment stated in the complaint; that
said plaintiff and *James H. Judson* had then procured of
Dodge & Judson a lease of the steam mill of which the defendant then had no knowledge; and denied that the defendant
consented to the assignment from *James H. Judson* to the
plaintiff; that on the 1st day of August, 1859, the rent for the
use of said mill was then and long prior thereto had been
due and unpaid, and that he then, in pursuance of the said
lease, and on account of the covenants and conditions thereof
so broken, entered upon the premises and took possession in a
quiet and peaceable manner, and forbid the plaintiff sawing
said logs, for the reason that the said logs had been sawed up
in an unworkmanlike manner, and had been wasted and spoiled,
and that subsequent to signing the consent to the sawing of
said logs by the plaintiff and *James H. Judson*, he sold them to
one William Morrison, and that as his agent he called on the
plaintiff for a statement of the amount of lumber sawed from
said logs, which the plaintiff refused to give, and refused to

deliver the lumber sawed, to him for Morrison; that he did not threaten to enter and take possession of the mill as stated by the plaintiff, but that on the 1st of August 1859, he was in the quiet possession thereof, and he then delivered possession to said Morrison; that the said plaintiff and *James H. Judson* committed great waste in the sawing of said logs, and manufactured the lumber in an unworkmanlike manner, whereby there had been lost forty thousand feet, and that the lumber sawed was thereby unsaleable and of little value; all to the damage of the defendant of $1,000, for which he asked judgment. The issue joined was tried before the court and a jury. The lease from the defendant to Dodge & Judson was then read in evidence, but it is not contained in the printed case. The agreement signed by the defendant, consenting to sub-letting the mill, was read in evidence and is as follows: "Know all men by these presents, that I, *Benjamin Single*, of the county of Marathon and state of Wisconsin, in consideration that *James H. Judson* and *Edward Jolly*, of the same place, have contracted with Dodge & Judson, of the same place, to rent the steam saw mill situated on the Little Rib in said county, known as Single & Morrison's mill, and saw up the logs now in and on the banks of said Little Rib, at the rate of one and 75-100 dollars per thousand feet and receive their pay in lumber, monthly, at the rate of seven dollars per thousand feet; and, whereas, I, the said *Benjamin Single*, have a mortgage lien on said logs from the said Dodge & Judson, and in consideration of having the said logs manufactured into lumber as specified in the said contract with the said Dodge & Judson, I hereby consent and authorize the said *Judson* and *Jolly* to saw the said logs and receive their pay, and do all things in relation thereto as specified in said contract, and hereby relinquish all claim to so much of said lumber as may be required for pay of sawing, as aforesaid. In testimony whereof I have hereunto set my hand this eleventh day of April, A. D. 1859. (Signed,) *B. Single.*" The agreement between Dodge & Judson, leasing the

mill to the plaintiff and *James H. Judson*,. was then read in evidence, and is substantially set out in the complaint.

*James H. Judson* testified on the part of the plaintiff, that he assigned his interest in the lease or license to the plaintiff, on the 29th of June, 1859 ; that the mill was not run day and night because Dodge & Judson agreed with us not to do so. The defendant was with us during a portion of the time we occupied the mill, and had knowledge of the contract between Dodge & Judson and the plaintiff and *James H. Judson*, when it was talked over and agreed upon, and before it was reduced to writing. James Single, as agent for the defendant, directed us where to pile his rent lumber, and it was piled as he directed, and manufactured according to the contract. He received lumber to the amount of about 40,000 feet as rent, and the mill was run to the extent of its capacity, to the best of our ability. The defendant knew of our lease at the time he signed the written contract; the mill laid still for repairs, from about the first week to the last week in June, and it was run night and day during a portion of the time only, but defendant did not make any objection to its not being run nights, in my hearing.

Garry L. Judson testified that the mill was let to the plaintiff and *James H Judson*, with the advice and consent of the defendant, and the last payment of rent was made to the defendant on the 30th of July, 1859.   On the next day after this the defendant interfered with the plaintiff's possession of the mill; he did not object to his running the mill ; said he had no objection to his sawing other logs, but he could not saw the logs specified in the contract.   The next day he stopped plaintiff running the mill, and took away the gibs, keys, cylinder head and connecting rod of the engine; he did not demand a statement of the lumber sawed, but a delivery of it, with which the plaintiff said he had nothing to do; that his contract was to saw it.   The defendant said he might run the

mill if he would deliver to him the lumber made from the logs, and the dispute was about the logs and not the mill.

*Edward Jolly*, the plaintiff, testified that the defendant prevented him from running the mill on the 1st of Aug. 1859, and forbid the sawing of the logs mentioned in the contract, and that up to that time he had made no objection to his running the mill; he objected to the plaintiff sawing the logs because he would not deliver the lumber to him. The witness then testified to the taking away of parts of the machinery of the mill, and that it was thereby rendered incapable of use, and that he had been unable to run it since, on that account, and was for that reason unable to saw the logs mentioned in the contract with Dodge and Judson; that he then had twenty-two men in his employ who were thrown out of employment by stopping the mill, who were boarded by him, and that it was worth $10 a month to board each man; that the net earnings of the mill per day were $13.04; did not get a full crew of men to run it night and day until the last day, but the defendant made no objection on that account, and that the plaintiff had possession of the mill all the time and had it still.

*Benj. Single*, the defendant, testified as follows: "*James H. Judson* applied to me for license to saw the logs in question, which I had received of Dodge & Judson; they had given me a bill of sale of them. On the 2d of May, 1859, I left for St. Louis and while there, sold these logs to Morrison who knew nothing of the plaintiff's contract to saw them, and I never saw the lease from Dodge and Judson to the plaintiff and *James H. Judson*, until Aug. 1859. I signed the consent for them to saw the logs; I returned from St. Louis in July and demanded of the plaintiff that he turn out the lumber sawed, to me for Morrison, and told him that the logs had been sold to Morrison; the plaintiff refused to do so and I forbid him in Morrison's name from sawing any more of them." He further testified as to the taking away of parts of the machinery and that the rent was not paid up at that time, and

that the mill had been idle before this, and after his return from St. Louis, for two weeks; that the mill was not run night and day in 1858, and he knew of this when the mill was leased to the plaintiff and *James H. Judson*; that the rent piles of lumber with the whole pile of the last weeks sawing, were taken away and sold by him to Morrison and that he knew the piles were rent lumber when he took them away. The defendant also proved that the mill was not run to its utmost capacity, from April to June, and was not run nights and that it lay idle from sometime in June to the 10th or 15th of July when it started again. After the evidence was concluded, the defendant asked the court to instruct the jury; 1st. That if the jury find that plaintiff has broken any of his covenants in regard to running the mill and manufacturing lumber, then they can find no damages for him. 2nd. That if the plaintiff kept all of the covenants by him agreed to in writing; yet if he sawed other logs than those covered by the license of the defendant; it is such a violation of the contract, as would authorize the defendant to oust the plaintiff. 3d. That the license from defendant to plaintiff and *James H. Judson* is an executory license, revocable so long as executory, at the pleasure of the defendant. 4th. That a sale of logs covered by the license, to a *bona fide* purchaser operates as a discharge of the license, and the right of the plaintiff under it ceased by such sale. 5th. That the sale by *James H. Judson* to plaintiff, without the consent of defendant, of the license executed to the plaintiff and *James H. Judson* jointly, discharges the license. 6th. That the measure of damages is not the net earnings of the mill during the time it might lay idle by defendants trespass, but the costs of restoring the mill to running condition, or the value of the property taken and carried away by him. The court refused to give either of said instructions to which refusal the defendant excepted.

The jury returned a verdict as follows: "We, the jury, find in favor of the plaintiff: 1st, we find, that the plaintiff

is entitled to recover from the defendant the sum of three hundred dollars damages. 2d, we find the plaintiff is entitled to the possession of the premises mentioned in the plaintiff's complaint." The defendant moved to set aside the verdict because, 1st. It was contrary to law and evidence. 2. The jury had not passed upon all the issues and had not found that he threatened to disturb the plaintiff's possession, nor that he committed the trespass charged. 3. The verdict is not sufficient to warrant a judgment granting the relief demanded in the complaint. 4. The damages are excessive and not warranted by the pleadings and evidence. The attorneys for the plaintiff in opposing said motion moved the court to amend the verdict by waiving a part of the relief prayed for, and cancelling the verdict as to the right of possession, and the court amended the verdict accordingly and overruled the motion for a new trial, to which the defendant excepted. Judgment was entered upon the verdict for the amount of damages and costs of suit, from which the defendant appealed.

*Abbott, Gregory & Pinney*, for appellant.

*Wakeleys & Vilas*, for respondent.

*By the Court*, PAINE, J. There can be no doubt that the complaint in this case states facts sufficient to constitute a cause of action for a trespass upon the plaintiff's possession. It avers that the mill was leased by the defendant to Dodge & Judson who took possession and performed the contract on their part, that with the written consent of the defendant they sub-let it to the plaintiff and *James H. Judson*, under an agreement that the latter were to saw the logs on which the defendant had a mortgage; that they took possession, performed everything to be performed by them, and that *James H. Judson* assigned his interest to the plaintiff with the consent of the defendant, and that while the plaintiff was in possession fulfilling the contract, the defendant entered with force and carried away part of the machinery so as to prevent the running of

the mill. This clearly states a cause of action for trespass and it was evidently so intended, for the complaint then proceeded to aver the damages specially, and asked judgment for the amount. It is true it contained other allegations, made with the view of obtaining an injunction, and it was urged here that the complaint could only be regarded as seeking equitable relief and consequently that a judgment for damages merely, could not be sustained under it. But although it did seek equitable relief, it is quite as true that it sought a recovery of damages. And being sufficient to sustain such a recovery, the judgment cannot be disturbed for the reason that it is for damages only, not including the entire relief asked for. Whether or not there was a misjoinder of causes of action, we do not determine, as no such question was raised below.

The only questions presented here, arise upon the instructions asked by the defendant and refused by the court, and upon the sufficiency of the verdict. The first instruction asked for was too broad. It should in view of the evidence have been qualified. For though the case does not show the original lease, nor what would have been a ground of forfeiture, yet even assuming that any neglect by the lessees to comply with its requirements might work a forfeiture, still the lessor could have waived it. And if after such waiver he had committed a trespass upon the lessee, he would be liable for the damages. Take for illustration, the agreement by the lessees, to run the mill night and day. There was evidence tending to show that it was not run night and day. But it was also shown, that this was with the full knowledge of the defendant, and that he continued afterwards to receive the rent. There was evidence, also to the effect that the defendant did not at the time he attempted to take possession, insist on this as any ground of forfeiture, but refused to allow the plaintiff to go and saw the logs, because the latter would not turn out the lumber to him. Upon such evidence the jury might well have found that although some ground of forfeiture had

once existed, yet that it had been waived. And if so the plaintiff could still recover damages for the trespass. The instruction was therefore too broad.

The second instruction asked for was as follows: " That if the plaintiff kept all the covenants agreed to by him in writing, yet if he sawed other logs than those covered by the license of the defendant, it is such a violation of the contract as would authorize the defendant to oust the plaintiff."

We see no evidence tending to show that the plaintiff sawed any other logs, and if there was none, the instruction was properly refused, for the reason that there was no evidence raising any such question. But even if there had been such evidence the instruction is incorrect. The defendant had leased the mill to Dodge & Judson. The lease itself does not appear in evidence, but taking it as set forth in the defendant's answer, the rights of the lessees, were not limited to the sawing of any particular logs. The defendant consented in writing that they might sub-let the premises, for no other construction can be given to the consent signed by him, the assignees undertaking to saw the logs on which he had a mortgage. There is nothing in this, that by any fair construction should be held to restrict their rights to the sawing of those logs only, any more than the rights of the original lessees were so restricted.

The third, fourth and fifth instructions asked were erroneous, in assuming that the interest of the plaintiff was that of a licensee merely. His interest was that of a lessee. The defendant leased the property to Dodge & Judson. It was provided that they should not under-let without his consent. But he did consent, and the plaintiff and *James H. Judson* in pursuance of that consent, leased from Dodge & Judson. But the fact that such consent was necessary to the validity of such sub-letting, by no means converts such sub-lessees into mere licensees whose rights are revocable at the pleasure of the original lessor. On the contrary, having become lessees by his con-

sent in pursuance of the original lease, their rights are as little liable to be revoked by him, so long as they comply with the terms of the lease, as were those of the original lessees.

The defendant was not entitled to the sixth instruction for reason that it limited the plaintiff's right of damages to the mere " cost of restoring the mill to running order, or the value of the property carried away." Such a rule applied to such a case would be grossly unjust.    A party is in possession of a mill, and has hired a large number of men to work it.   He has on hand a large number of logs, which he is entitled to saw, and in sawing which he can earn a certain sum each day over and above all expenses.    A trespasser for the very purpose of stopping the mill, goes and takes away some portion of the machinery, not of very great value, but of such a nature the mill must stop without it.   The court was asked to confine the damages in such a case, to the value of the property taken or the cost of restoring it, leaving the plaintiff to pay all his men, loose all their time and the use of the mill, during the time it necessarily lay idle by reason of the trespass.    It is only nec- essary here to say, this is not the correct rule.   *Shepherd vs. The Gas Company*, 15 Wis., 318; *Griffin vs. Colver*, 16 N. Y., 489.

The verdict was sufficient as originally rendered by the jury, to sustain the judgment.    First there was a general finding in favor of the plaintiff, and then the damages were assessed at three hundred dollars.   This is sufficient.   *Everit vs. The Wal- worth Co. Bank*, 13 Wis., 419.    The finding that the plaintiff was entitled to the possession, may have been superfluous, but it did not vitiate the rest.   And whether it was stricken out or not by the court, was immaterial.   The evidence was such as warranted the verdict, and there was no error in denying a new trial.

The judgment is affirmed, with costs.