WHITNEY vs. CLIFFORD.

CONTRACTS: Liability of parties to contract, for tort to third persons. *(1) Contract construed as not a lease of real property, but a contract of hiring. (2) Liability of owner of realty for injuries caused by its defective condition. (3) Query as to rule as between landlord and tenant.*

1. X. and Y. entered into a contract by which X. was to operate, during a certain milling season, a shingle mill, which, at the time of contracting, was "in the possession and under the control" of Y., and was to manufacture in a specified manner shingles from logs to be furnished by Y., and to be paid specified rates per M. for so doing; and he was to hire and pay all the men employed in such manufacture, and furnish certain tools and other articles, not in the nature of fixtures, used in the same, and repair any break in the machinery, the cost of whose repair should not exceed $5 (larger breaks to be repaired at Y.'s expense), and was to load the shingles at his own expense, on the switch of said mill (except that, until a certain side track to the mill should be completed, any expense of such loading beyond a certain maximum was to be paid by Y.). Y., on his part, agreed to put the mill in good running order, and furnish at the mill boom logs suitable for the purpose, in sufficient quantity to keep the mill running during said season, and was to cause to be removed all slabs and refuse timber, so that the amount of the same upon the mill grounds at any time should not exceed a certain number of cords, and was to pay X. on the first of each month the amount due him for manufacturing during the preceding month. *Held,* that this was *not a lease of the mill,* but a mere contract of *hiring. Jolly v. Single,* 16 Wis., 280, distinguished.

2. Even if the strict relation of master and servant did not exist between Y. and X., yet, if adjoining property of a third person was injured by fire emitted from the smoke-stack of the mill, and such injury was caused by *some defect in the mill* existing when X. took possession (and which Y. was bound to remedy), and occurred while X. was using the mill in the manner in which such mills are ordinarily used, and in doing the work contracted to be done for Y., then Y. is liable to the party injured.

3. Whether the rule last stated would hold good if the relation of landlord and tenant had existed between Y. and X., not determined.

APPEAL from the Circuit Court for *Portage* County.

The plaintiff appealed from a compulsory judgment of nonsuit. The case is sufficiently stated in the opinion.

The appeal was submitted on the brief of *G. W. Cate,* with

*Jones & Sanborn,* of counsel, for the appellant; and that of *Raymond & Haseltine* for the respondent.

TAYLOR, J. This action is brought to recover damages for burning a large quantity of lumber belonging to the plaintiff. The complaint charges that the fire was communicated to the lumber by sparks and cinders emitted from the smoke-stack of a shingle mill belonging to and used by the defendant at the time of the accident. Upon the trial in the court below, the learned circuit judge directed a nonsuit, and judgment was entered against the plaintiff.

The only ground upon which it is contended in this court that the nonsuit was properly ordered, is, that the defendant, at the time of the fire, was not in the possession of the mill, and that one A. F. Dodge was in such possession and had the exclusive control of the running and use of the same, under a written contract with the defendant.

It is urged by the learned counsel for the respondent, that the contract referred to created the relation of landlord and tenant between the defendant and Dodge; and that Dodge, being in the actual possession and use of the mill at the time of the fire, as tenant, is alone responsible for the injury occasioned to the plaintiff by reason of the fire communicated by the sparks and cinders emitted from the smoke-stack of said mill. It is also insisted, that if the relation of landlord and tenant did not exist between the defendant and Dodge, yet, by the provisions of the contract, the possession and control of the use of the same was in Dodge at the time, and therefore the defendant is not liable for the damages caused by the use of such mill.

Upon this appeal, it is unnecessary to examine any other questions than the ones above stated, as it is quite evident that upon other points of defense to the action there was sufficient evidence to entitle the plaintiff to have the same submitted to the jury.

The following is a copy of the contract between the defendant, *Clifford*, and Dodge, under which it is claimed that Dodge was in possession and running the mill when the fire occurred:

"It is hereby agreed by and between A. F. Dodge, of the city of Stevens Point in the county of Portage and state of Wisconsin, and *William J. Clifford*, of the same place, that said Dodge shall work and operate, during the milling season of 1877, a certain shingle mill situate in the city of Stevens Point, which said mill is now in the possession and under the control of said *Clifford*, and shall manufacture shingles from logs to be furnished by said *Clifford* as hereinafter stated. It is further agreed by and between said parties, that said *Clifford* shall pay to said Dodge the following rates for manufacturing said shingles: for the brand known as Star A. Star, 60 cents per thousand, and for the brand known as Shaded A., $42\frac{1}{2}$ cents per thousand. It is further agreed by and between said parties, that said shingles shall be made and put up in a good and workmanlike manner, and that said Dodge shall hire and pay all the men employed in the manufacture of said shingles, and shall furnish all bands, band-iron, oil, nails and files, in the manufacture of said shingles, and shall pay for repairing all breaks in the machinery of the said mill, when the cost of said repairs shall not exceed $5; any break in the machinery of said mill, the repairing of which will cost more than $5, to be paid for by said *Clifford*. It is further agreed by and between said parties, that said Dodge shall load all shingles so manufactured as aforesaid, on the cars on the switch of said mill, said *Clifford* to pay all expenses for loading said shingles, over and above the sum of $1.25 per car, until such time as a new side track to said mill shall be completed; after the completion of said side track, said loading to be done by the said Dodge, and included in said amount to be paid for manufacturing said shingles. It is further agreed by and between said parties, that said *Clifford* shall remove, or cause to be removed, all slabs and refuse timber from the grounds of

said mill, so that the amount of said slabs and refuse timber on the grounds of said mill shall not at any time exceed ten cords. It is further agreed by and between said parties, that said *Clifford* shall take an account of all the shingles manufactured during each week, at the end thereof, and shall credit said Dodge with the amount. And it is further agreed by and between said parties, that said *Clifford* shall settle with said Dodge on the first day of each month, and shall at that time pay said Dodge the amount due for manufacturing said shingles at the price above stated. It is further agreed by and between said parties, that said *Clifford* shall furnish to said Dodge good and suitable logs for shingles, to be manufactured as aforesaid, said logs to be delivered in the mill boom by said *Clifford*, and that said *Clifford* shall put said mill in good running order, and furnish logs as aforesaid in sufficient number to keep said mill running during the running season of 1877. It is further agreed by and between said parties, that all shingles less than four inches, clear from knots in butt, may be packed and sold by said Dodge for his separate use and benefit, or said *Clifford* shall have the right to take said shingles less than four inches clear, by paying said Dodge 25 cents per thousand for manufacturing good shingles."

After a careful consideration of the provisions of this contract, we think it is not a lease of the mill by *Clifford* to Dodge. Nothing in the language of the contract indicates that the parties intended it as such, and there does not appear to be anything in the nature of the contract which necessarily creates the relation of landlord and tenant. All the circumstances of the respective parties, as indicated by the terms of the contract, show that it was a hiring by *Clifford* of Dodge to manufacture certain logs owned by *Clifford* into shingles, *Clifford* furnishing the machinery for manufacturing the same, and Dodge furnishing the labor and other necessary things to run the machinery, pack the shingles and deliver the

same on the cars at the mill, at a fixed price per thousand for the shingles manufactured, according to quality. *Clifford* was to put the machinery in good repair, and to repair all breakages costing more than $5.

Dodge acquired no right under the contract to use the mill for any other purpose than that of manufacturing the logs furnished by *Clifford*. · The sole object of the contract, on the part of *Clifford*, it would seem, was to get his pine lumber manufactured into shingles, not to get a rent for his mill. He furnished the machinery to manufacture the shingles, and thereby lessened to himself the cost of their manufacture to the extent which the use of such machinery was worth in the manufacture of the same. Instead of hiring men by the day or month, at fixed wages, to manufacture his logs into shingles, he employs one man to do the whole work, employing his own help, paying him according to the quantity and quality of shingles manufactured, thereby relieving himself from all the details of the work of manufacturing, and at the same time securing speed and faithful work in the manufacture, by making the earnings depend upon the quantity and quality manufactured. Again, the provision in the contract that *Clifford* is to keep the premises clear of slabs and refuse, so that Dodge will not be embarrassed in the use of the mill and machinery, indicates very clearly that he was to have the possession and use of the mill and machinery for the single purpose of doing the work of *Clifford*. The furnishing, by *Clifford*, of machinery in the nature of real estate necessary to manufacture the shingles, no more constituted Dodge his tenant, than if he had furnished him machinery which was strictly chattels. That this was strictly a contract for the performance of labor is evident, if we consider the question as to who was the owner of the shingles during the process of manufacture and when their manufacture was completed. It is evident that the title to the shingles during all three stages of manufacture remained in *Clifford*, and not in Dodge. Under the contract,

Dodge had no right to run the machinery a day or an hour, except in the manufacture of shingles for *Clifford* out of materials furnished by him. The effective words of the contract are, that Dodge "shall operate the mill now in the possession and control of *Clifford*, and shall manufacture shingles from logs to be furnished by said *Clifford*, . . . . and that *Clifford* shall pay the following rates for manufacturing said shingles:" clearly a hiring on the part of *Clifford*, accompanied on his part by an agreement that Dodge, in the performance of the work agreed to be done by him, shall have the use of certain machinery of *Clifford's*. In case *Clifford* had refused to furnish any logs to be manufactured under the contract, and refused to permit Dodge to use the mill any way, Dodge could not have recovered as damages what the use of the mill would have been worth for the season. His damages, if any, would have been the difference between the price he was to receive for the manufactured shingles under the contract, less the cost of such manufacture under the terms of the contract.

The case of *Jolly v. Single*, 16 Wis., 280, cited by the learned counsel for the respondent, does not conflict with the construction we put upon the contract in this case. In that case the original contract is not in the record, but it was claimed that it was set out in the answer, and the answer alleges that there was a lease of the mill, and that the rent reserved to the landlord was two-ninths of all the lumber manufactured in said mill. It would seem, from the statement of the case, that the contract was in the form of a lease, with rent reserved.

The case of *Walls v. Preston*, 25 Cal., 60, also cited by respondent's counsel, was a case in which the contract itself was in the form of a lease in all its parts, and formally demised and let the premises for a fixed term to the tenant. And it was contended that it did not create the relation of landlord and tenant, only because the landlord was to receive as rent

one-sixth of all the crops raised. The court held it was a lease, and we think very properly so held.

The case of *Fisk v. Framingham Manufacturing Company*, 14 Pick., 491, also cited by the counsel for the respondent, is one which in some of its facts is quite similar to the contract in the case at bar, and to some extent favors the construction put upon the contract by the counsel for respondent.

The report of that case does not set out the entire contract, and there were at least two provisions in that part which is set out in the report, which seemed to be of great weight in giving the construction which was adopted by the court, which are not found in the contract in the case at bar. One of these provisions was, that the party running the mill was to have the use of the land about the factory and the buildings thereon. And the court argue that under this clause he would have the right to receive rent for those buildings from the laborers or others who occupied them. The other provision was, " that no rent is to be charged by the company." The court say of this that it tends to prove that a letting was contemplated.

The court, also, in that case, laid great stress upon the provision that the person in possession was to keep the factory in repair, except that the owners were to repair the main gearing. In this it also differs from the contract in this case. The person running the mill in the case at bar was only to repair slight breaks in machinery; all breaks or repairs involving any considerable outlay of money were to be made by the owner, *Clifford*. And, in addition, the owner was to keep the premises clear of all slabs and refuse, so that the contractor should have the free use of the machinery to do his work.

It will be seen, also, that there are no words in the contract in this case giving the possession of the mill and machinery to the contractor, the language being, " that Dodge shall work and operate and manufacture shingles out of the logs of *Clif-*

*ford;*" nor are there any words requiring the contractor to surrender or deliver the possession at the end of the season to the owner, *Clifford.*

But it is argued by the counsel for the respondent, that, admitting the contract did not create the relation of landlord and tenant between *Clifford* and Dodge, yet under it Dodge was in the actual possession of the premises, and using them under a contract which entirely excludes the assumption that he was the agent or servant of the defendant at the time the fire occurred, and therefore the defendant is not liable to the plaintiff for the damages sustained by him by reason of the escape of the sparks and cinders from the smoke-stack of the mill while so used by Dodge.

If it should be admitted that under the contract between *Clifford* and Dodge, Dodge was in no way under the control or direction of *Clifford* as to the manner of doing the work agreed to be done by him, and that the relation of master and servant, in its strict and ordinary sense, did not exist between them, still we are of the opinion that *Clifford* must be held liable for any damages which resulted to the plaintiff from the use of the mill by Dodge.

By the terms of the contract, *Clifford* obligated Dodge to use his mill in performance of the work he employed him to do, and he also agreed to put the same in good running order for the use of Dodge. The evidence shows that, as to the defect complained of, the mill was in the same condition at the time the accident happened as when Dodge took possession, and it does not show that Dodge used the mill in a way which differed materially from the ordinary use of such mills.. The case falls clearly within the rule laid down by this court in the case of *Hundhausen v. Bond,* 36 Wis., 29, that, " when the obstruction or defect which occasioned the injury results directly from the acts which the contractor has agreed and is authorized by his employer to do, the employer is also liable to the injured party." The rule above stated is laid down in *Robbins*

*v. Chicago*, 4 Wall., 657, as follows: " When the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is, that the employer is not liable; but when the obstruction or defect which occasioned the injury, results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts, is equally liable to the injured party." The rule was stated a little differently in the same case reported in 2 Black, 418–28, " that, if the nuisance necessarily occurs in the ordinary mode of doing the work, the occupant or owner is liable; but if it is from the negligence of the contractor or his servants, then he alone should be responsible." In the case of *Ellis v. Sheffield Gas Co.*, 2 Ellis & Blackburn, 769, LORD CAMPBELL, C. J., says: "I am clearly of the opinion that if the contractor does the thing which he is employed to do, the employer is responsible for that thing as if he did it himself;" and this rule was approved by all the other judges.

The same rule is approved in *Storrs v. The City of Utica*, 17 N. Y., 104; *Lowell v. B. & L. R. Corp.*, 23 Pick., 24; *Hole v. Railway Co.*, 6 Hurl. & Nor., 497; *Bush v. Steinman*, 1 Bos. & Pul., 404.

In the case at bar, the defendant employed Dodge to manufacture his logs into shingles, and, for his own benefit and advantage, stipulated in the contract that Dodge should use his mill in the performance of the work. The damage complained of by the plaintiff was the result of the use of such mill by Dodge in doing the work contracted to be done for the defendant, and there is no evidence, at all events no conclusive evidence, that Dodge used the mill otherwise than such mills are ordinarily used, in the performance of the plaintiff's work; and the clear tendency of the evidence is to prove that the accident happened from a defect in the construction of the mill itself, for which defect Dodge was in no manner responsible.

It seems to us very clear that in such case the person who directs, for his own benefit and advantage, the use of the dangerous thing, should be held liable for all damages resulting from such use.

If the defendant's mill was so constructed that, when used in the ordinary way of using such mills, it endangered the property of others in its vicinity, and his contract with Dodge required him to use such mill in doing his work, there can be no doubt that the owner should be held liable for the damages occurring to other persons resulting from such use.

Whether this rule would hold good if the relation of landlord and tenant existed between the defendant and Dodge, it is unnecessary to decide in this case.

In our view of the law applicable to the case, there was sufficient evidence upon all the points necessary to sustain the plaintiff's action, to entitle him to have the same submitted to the jury, and it was error for the learned circuit judge to direct a nonsuit.

*By the Court.* — The judgment of the circuit court is reversed, and a new trial ordered.