ED STRAABE v. NELS JACKSON AND ANOTHER.[1]

NELS JACKSON AND ANOTHER v. ED STRAABE.[1]

July 21, 1916.

Nos. 19,880—(239).

**Vendor and purchaser — recovery of possession — charge erroneous.**

1. In an action by the vendor to recover, from a defaulting vendee, possession of real estate sold upon an executory contract, an instruction that the vendee is entitled to retain possession, if the sale was effected through the vendor's fraud, is erroneous.

**Same — reformation of instrument.**

2. Upon the facts here disclosed the deceit, if any, practiced in substituting a contract for deed in place of a deed and mortgage does not furnish equity ground for rescinding the sale. The remedy would be reformation of the instrument.

**Same — rescission.**

3. The vendee, while claiming the right to rescind on account of the vendor's misrepresentation as to the acreage of the farm, still persisted in its retention and use for such a long time after knowledge of the deception that equity should not now decree a rescission, since, by proper allowance for the deficiency, he may be placed in the same position he would have occupied had there been no misrepresentation; for it appears that the purposes for which the land was bought were such that it could not have been deemed by the vendee to be essential that there should be the exact acreage represented, the character and boundary of the land being well known to the vendee, and, according to his claim, the purchase price being determined by a fixed price per acre.

Two actions in the district court for Anoka county. One action was by Nels Jackson and Jennie Jackson against Ed Straabe to recover $1,000 for rents and profits from land belonging to plaintiffs while in the possession of defendant. The other action was by Ed Straabe against Nels Jackson and Jennie Jackson to rescind a sale of the land for fraudulent representations on the part of defendants and to recover the sum of

[1] Reported in 158 N. W. 915.

$3,500 paid to them by plaintiff and the further sum of $4,700 damages sustained by plaintiff on account of the fraudulent acts of defendants. The cases were tried together upon the order of Giddings, J., and a jury which in the action of Straabe against Jackson returned answers to 14 specific questions submitted to them, and in the case of Jackson against Straabe returned a verdict in favor of defendant. Nels Jackson and Jennie Jackson appealed in each case from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*A. B. Darelius,* for appellants.

*W. H. Bissell Thomas* and *J. M. Pulliam,* for respondent.

HOLT, J.

Nels Jackson was the owner of a farm in Anoka county, which Ed Straabe, in December, 1913, concluded to buy. There was then paid $500 as earnest money, and Jackson gave a receipt therefor. In the first part of February, 1914, another visit was made by Straabe to the farm, when he paid $2,000 more and received another receipt; he also bought from Jackson certain stock and farm implements for about $2,000. On March 15, 1914, Straabe moved onto the farm with his family and, on the twenty-third of the same month, the parties, and their wives, went to Anoka where a banker drew formal contracts in duplicate, under which in consideration of the payments theretofore made, $1,000 additional then paid, and certain future payments to be made, Jackson and his wife were to convey the farm to Straabe. The contracts were duly executed. Straabe cropped the farm in 1914. In the spring of 1915, Straabe claims to have discovered that Jackson and his agent had misrepresented the acreage of the farm, also that by fraud practiced upon him he had been led to believe that the documents executed on March 23, 1914, were a warranty deed and mortgage. And he thereupon offered to surrender the farm to Jackson upon being paid the $3,500 he had paid upon the purchase price. Jackson refused, and insisted upon payment of the instalment then due. It was not paid. On April 13, 1915, Straabe began an action to rescind the contract of purchase for the stated false representations and fraud and for the recovery of $3,500. An answer was interposed, denying the charge in the complaint. In the meantime Jackson

brought an action in ejectment for possession of the farm, he having given the 30-day notice to cancel the contract because of the failure and refusal of Straabe to pay the instalment due March 23, 1915. To this action the defense of the pendency of the equity suit was pleaded, also a counterclaim of no importance since no proof thereof was offered. The two cases were upon the October, 1915, general term calendar, and the court, against the objection of Jackson, ordered both tried together, framing issues for the jury in the equity suit. A verdict for defendant was rendered in the ejectment action, and the issues submitted to the jury in the equity suit were all answered in favor of the plaintiff therein. In each case Jackson moved for judgment notwithstanding the verdict or for a new trial. And in each case the motion was denied, and these appeals followed.

Relative to the issues in the ejectment suit Jackson assigns error upon this part of the charge: "Straabe says he was led into this deal through fraud, deceit and misrepresentations, and having been so led to pay his money, $3,500, he is now entitled to remain in possession until such time the money is repaid to him * * *. If you find the claim of Straabe true, if he has sustained his defense as to that claim, then the court instructs you as a matter of law he would be entitled to remain in possession and your verdict in the ejectment case would be for the defendant Straabe." We think the instruction erroneous. Jackson's legal ownership was conceded, except for such right to possession as Straabe might have under the contract. When the latter renounced the contract, he necessarily abandoned the right to claim possession under it. The right to possession then reverted to the legal owner. Insistence upon the retention of possession of the property by a purchaser after discovery of the fraud inducing the purchase, is generally held such an affirmance of the contract that an action for rescission does not lie. There may be cases where under peculiar facts, such as insolvency of the vendor or where the property is liable to go to waste and the vendor refuses to accept a return, the retention of possession may not be held such binding evidence of an affirmance that, in a proceeding in equity, rescission will be denied. It also has been held that, in an executory contract for the purchase of land where the title of the vendor has partially or totally failed, the vendee may retain possession while maintaining his action for rescission

(Taft v. Kessel, 16 Wis. 291; McIndoe v. Morman, 26 Wis. 588, 7 Am. Rep. 96) the theory in such cases being that there is an equitable lien to be maintained and enforced. The courts of New York apply the same doctrine when rescission is based upon defect in the vendor's title, but draw a distinction between such cases and those wherein rescission is sought by the purchaser for the seller's fraud, the court holding that in the latter, by the election to rescind, the contract is wiped out and nothing remains whereon to predicate a lien. · Davis v. Rosenzweig Realty Operating Co. 192 N. Y. 128, 84 N. E. 943, 20 L.R.A.(N.S.) 175, 127 Am. St. 890. If a vendee, rescinding for fraud, does not have a right to an equitable lien, he surely can have no right to retain possession in aid of the lien. Courts of other jurisdictions hold to the contrary. Hickson v. Lingold, 47 Ala. 449. It is not necessary to adopt either of these opposing views now. It is enough to say that the broad statement contained in the instruction, that if Straabe had proved either of his two allegations of fraud a good defense in law had been made out in the ejectment action, is not correct. In equity, as already remarked, insolvency of the vendor might be a reason for excusing the nonrestoration of possession to him by a vendee seeking rescission. But there is no excuse of that sort suggested here. If any security, by way of possession or an equitable lien, is to be afforded a rescinding vendee, it has to be worked out by the chancellor in an action for rescission, and is not a defensive matter to be applied in the vendor's action at law to recover possession because of the vendee's default.

The instruction was also erroneous because one of the items of fraud submitted to the jury was not of such nature that the right to rescind could be based thereon, hence was not a defense. We refer to the alleged misrepresentation in respect to the writing executed on March 23, 1914. The deal for the farm was made (and two instalments paid) more than two months prior to that date. At the time the first earnest money was paid some sort of a contract or receipt was given by Jackson, likewise when $2,000 were paid in February, 1914. Both are now conveniently destroyed. Straabe rests on the claim that the first receipt or memorandum stated he was to receive a warranty deed, otherwise its contents are not disclosed. For aught that appears the warranty deed would not be demandable until payment of the whole purchase

price. Not much more than one-third thereof was paid when the duplicate contract was executed. Straabe took possession and has farmed the land ever since. Any deceit occurring on March 23, 1914, in respect to the character of the instruments then executed should not entitle defendant to recover the $2,500 theretofore paid upon what appears to have been a valid bargain, aside from the alleged misrepresentation as to the acreage. If something different was palmed off on Straabe from what he was to have under the previous agreement, it was a breach of an existing contract. Neither Lockwood v. Geier, 98 Minn. 317, 108 N. W. 877, 109 N. W. 245, cited by appellant, nor Kiefer v. Rogers, 19 Minn. 14 (32), relied upon by respondent, are in point or of any assistance upon the facts now before us. The proper remedy here, if there be adequate proof to sustain the finding of the jury that deception was practiced in substituting a contract for a deed in place of a deed and mortgage, would be a reformation of the same so as to correspond with the agreement which the parties had theretofore made, and not a rescission of the deal.

The farm consisted of five government forties. There was no proof of the actual acreage by a survey, but the plat of the government survey was received in evidence and indicates that two of the forties contain less than 40 acres each, one containing 37.39 and the other 34.93 acres. Public roads absorb part of the land described by the government subdivisions in the contract. It was alleged that Jackson and his agent represented the farm to contain 200 acres, and that in buying Straabe relied on the representation. The jury found the allegations true, and also found that the representation as to acreage was false, was made for the purpose of inducing Straabe to buy, and that the latter was damaged thereby. We may assume these special findings to have support in the evidence. Nevertheless the facts diclosed do not call for a rescission. It is true, that one induced to purchase real estate by misrepresentation or fraud as to a material fact may rescind without showing damage. See cases cited in Lindquist v. Gibbs, 122 Minn. 205, 142 N. W. 156, and Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710. And no doubt a deficiency in quantity of the land is material as well as damaging. But when the court can see that the misrepresentation affected nothing but the price, and this is so fixed by the bargain that all requirements of justice and equity may be accomplished by a proportionate

reduction, rescission should not be had. Here Straabe claims that the price was $50 per acre, and that, when he agreed to pay $10,000, it was on the representation that there was a sufficient number of acres at $50 an acre to make that sum. He fully examined the farm and knew its boundary and what land was included therein. The few acres lacking in the 200 can be readily compensated for upon the agreed acre price. The court might well find "that the purposes for which the land was bought were such that it was not deemed by the purchaser to be essential that there should be the amount of land represented," in which event the suggestion in Michaud v. Eisenmenger, 46 Minn. 405, 49 N. W. 202, that compensation rather than rescission is worthy of consideration. We are not aware that the suggestion made in the case last cited has ever been repudiated in any of our subsequent decisions as respondent seems to contend. The record also indicates that rescission now means a large loss to Jackson. He had left the farm for sale to an agent. Jackson was to have $7,600, and the agent whatever a purchaser produced by him would pay above that sum. It is pretty clearly shown that the agent was the active party, if there were fraudulent representations as to quantity of land. True, Jackson is legally responsible for the consequences, but an undue hardship will be visited upon him if rescission is allowed, for the agent has obtained $2,400 of the $3,500 paid by Straabe. While this situation may not appeal very strongly to a court of equity, it should not be ignored, especially where it appears that Straabe may be given the full measure of his bargain by returning to him $50 for every acre which the farm is short of the represented acreage.

Moreover if a defrauded vendee desires to rescind, he must promptly and unconditionally offer to return what he received in the transaction. If, after discovery of the fraud, he retains and uses the property obtained for his own purposes, he affirms the contract. Straabe brought his action for rescission, but still clung to the possession of the farm. He defended when Jackson brought ejectment, and still maintains his right to retain possession. He has now cropped the farm for three seasons, two subsequent to the discovery of the alleged misrepresentations. He should not now have rescission, if adequate relief otherwise may be given for wrongs suffered at the hands of Jackson. Clark v. Wells, 127 Minn. 353, 149 N. W. 547, is not authority for the right to retain possession

while insisting upon the right to rescind. In that case there was an unconditional offer by the defrauded purchaser to return the property, a stock of merchandise, and a refusal by the seller to receive it. A going mercantile business and stock in trade is apt to be totally destroyed if abandoned, not so a farm. The record in that case is not at all like the one before us now.

We think the whole record is so suggestive of the thought that the only proper remedy to apply for misrepresentations of acreage, if any there were, is a proper allowance for the deficiency, that a new trial should be had with that end in view. This conclusion makes it unnecessary to consider other errors assigned. But, in order to facilitate a just determination of this litigation, we think the parties should apply to the court below to consolidate these actions, after the remittitur goes down. To that end proper pleadings should be framed and the action tried to the court. Whether, by the commencement of the suit to rescind, equity was vested with power to declare inoperative the attempt to accomplish a forfeiture by the service of the statutory notice to cancel the contract for the default in its conditions, will be a question for serious consideration, in case the trial court should conclude that no ground exists for a reformation of the instrument. It would seem right that while one party to a contract, in good faith, is making his appeal to a court of equity for relief, the other party thereto should not in the meantime be permitted to avail himself of a statute to complete a forfeiture of the contract. We held in Freeman v. Fehr, 132 Minn. 384, 157 N. W. 587, that a court of equity may enjoin a vendor from giving such notice during the pendency of the vendee's suit to rescind. The decision took for granted, perhaps, that, unless stayed, the vendor might proceed to cancel the contract before the suit for rescission could be terminated, but the full effect of a vendee's action to rescind upon the vendor's right to proceed meanwhile with the statutory method of canceling the contract was not considered.

The orders denying a new trial are reversed.